IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| KENYA FILIPOWICZ,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>PEACHTREE HOTEL MANAGEMENT, LLC, and KEURIG DR. PEPPER INC.<br><br>　　　　　　　Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, through her counsel, for her Complaint and Jury Demand against Defendant Peachtree Hotel Management, LLC. ("Peachtree"), and, Keurig Dr. Pepper, Inc.("Keurig") states:

## 1. Nature of the Case

1.　Defendant Keurig designs, manufactures, markets, imports, distributes and sells a wide-range of commercial and consumer coffee makers and related products, which includes the Model Number K130 B130 single cup coffee brewer (referred to hereafter as the "single cup coffee brewer") that are at issue in this case. These coffee makers are a popular choice for hotels seeking a compact single-serve coffee maker for its guests and employees.

2.　Defendant Keurig designed, manufactured, marketed, imported, distributed and sold, both directly and through third-party vendors, the subject single-cup coffee maker with serious and dangerous defects. These defects cause significant risk of bodily harm and injury to its consumers.

3.　On or about December 23, 2014, Defendant Keurig started a recall of its single-serve

1

coffee maker after receiving at least 200 reports, including 100 reports of burn related injuries, of a "burn hazard". The "burn hazard" was reported to occur as a result of pressurized water overheating during the brewing process, causing it to explode and to spray out of the machine and burn consumers.

4. Defendant Keurig knew or should have known of these defects, but disregarded safety by continuing to sell its coffee makers to consumers and failed to warn consumers of the serious risks posed by the defects. Nevertheless, Defendant delayed recalling its coffee makers until on or December 23, 2014, after the Consumer Products Safety Commission ("CPSC") became involved.

5. Defendant ignored its knowledge of these defects in its coffee makers from the Plaintiff in this case, as well as the public in general, in order to continue generating a profit from the sale of said coffee makers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and others like her.

6. Defendant Peachtree Hotel Management, LLC., purchased the Keurig single-serve coffee makers and placed them in the hotel guest rooms. On July 21, 2021, Plaintiff began using the coffee maker. While waiting for her cup of coffee to finish brewing, the Keurig coffee maker exploded and sprayed hot water in Plaintiff's face leaving serious and painful burns. Defendant Peachtree knew or should have known of these defects, but disregarded safety by continuing to provide its coffee makers to hotel guests.

7. Defendant Peachtree knew or should have known of these defects, but disregarded safety by continuing to supply its hotel guests with Keurig single-cup coffee makers, and

failed to warn hotel guests of the serious risks posed by the defects or removing them from the hotel property all together.

8. As a direct and proximate result of Defendants collective conduct, Plaintiff in this case incurred painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life. The subject incident giving rise to this lawsuit occurred at the Hilton Garden Inn, in the State of Wyoming, and this case is brought under the substantive product liability and negligence laws of the State of Wyoming.

## II. The Plaintiff

1. Plaintiff at all times relevant and is currently a citizen of the State of Colorado.

2. On July 21, 2021, Plaintiff began using the Kuerig single-cup coffee maker. While waiting for her cup of coffee to finish brewing, suffered substantial burn injuries to Plaintiff's face as the direct and proximate result of pressurized scalding hot water spraying out of the top of the coffee maker.

3. The location of the subject incident is located in the State of Wyoming. By bringing these actions, Plaintiff avails herself of the jurisdiction and venue of this Court.

## III. The Defendants

4. Defendant Keurig designs, manufactures, markets, imports, distributes and sells a wide range of consumer coffee makers and related products.

5. Defendant Keurig, Inc. is a Delaware corporation doing business in all fifty states,

including Colorado, and deriving substantial revenue from ongoing and continuous sales of its products (including but not limited to the products at-issue in this case) in the State of Colorado and Wyoming, with its principal place of business located in Burlington, Massachusetts and maintains a registered agent for service of process in the State of Delaware.

6. Defendant Peachtree Management, LLC. is a Georgia corporation doing business in 27 states doing business in Colorado and Wyoming, deriving revenue from ongoing hospitality hotels which contain Keurig single-cup coffee makers and continues to place these coffee makers in its hotel rooms.

## IV. Jurisdiction and Venue

7. This Court has jurisdiction under 28 U.S.C. § 1332, diversity of citizenship.

8. The damages at issue exceed $75,000.

9. This Court is the proper venue under 28 U.S.C. § 1391(b)(2).

## V. Background and Facts

10. Defendant Keuring is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and selling the coffee makers at issue in this litigation.

11. On or about December 23, 2014, Defendant started a recall of its single-cup coffer makers after receiving at least 200 reports, including 90 reports of burn related injuries, of a "burn hazard"

12. The "burn hazard" was reported to occur as a result of pressurized water

overheating during the brewing process, causing it to spray out of the machine and burn consumers.

13. In addition, Keurig's warnings about this "burn hazard" are misleading and inadequate. They do not meaningfully address the risks of serious injury, and they do not tell users how to avoid those risks.

14. There is also no warning to users of the possibility that the superheated water can be forcibly ejected after the brew process is complete, creating the risk that a consumer will be severely burned.

15. By reason of the foregoing acts or omissions, Plaintiff used the coffee maker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of brewing coffee.

16. Defendant Peachtree Management, LLC. is a Georgia corporation doing business in 27 states doing business in Colorado and Wyoming, deriving revenue from ongoing hospitality hotels which contain Keurig single-cup coffee makers and continues to place these coffee makers in its hotel rooms.

### VI. Claims for Relief
### Count 1:
### Strict Liability: Keurig

17. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth herein.

18. At all times material to the allegations in this Complaint, Defendant was in the business of designing, manufacturing, marketing and selling coffee makers and did design, manufacture, market and sell the subject coffee maker giving rise to the subject matter of this lawsuit.

19. Defendant Kuerig is strictly liable to Plaintiff for design defects because the risks inherent in the subject coffee maker's design outweigh its utility, particularly given the availability of feasible, safer alternative designs that would not impair the coffee maker's functionality.  The subject coffee maker is defective in its design.

20. At the time of Plaintiff's injuries, Defendant Keurig's coffee makers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

21. Defendant's coffee makers were in the same or substantially similar condition as when they left the possession of the Defendant.

22. Plaintiff did not misuse or materially alter the coffee maker. The coffee maker did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

23. Further, a reasonable person would conclude that the possibility and severity of harm outweighs the burden or cost of making the coffee makers reasonably safe. Specifically:

    a. The coffee makers designed, manufactured, sold, and supplied by Defendant was defectively designed and placed into the stream of

6

      commerce in a defective and unreasonably dangerous condition for consumers;

    b. The severity of the potential burn injuries resulting from the coffee makers drastically outweighs any benefit that could be derived from its normal, intended use; c. Defendant failed to properly market, design, manufacture, distribute, supply, and sell the coffee makers, despite having extensive knowledge that the aforementioned injuries could and did occur;

    c. The severity of the potential burn injuries resulting from the coffee makers drastically outweighs any benefit that could be derived from its normal, intended use;

    d. Defendant failed to properly market, design, manufacture, distribute, supply, and sell the coffee makers, despite having extensive knowledge that the aforementioned injuries could and did occur;

    e. Defendant failed to warn and provide adequate warnings and instructions on and/or with the coffee makers;

    f. Defendant failed to adequately test the coffee makers; and/or

    g. Defendant failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiff' injuries and damages.

24. Despite the fact that Defendant knew or should have known that superheated water can be forcibly ejected after the brew process is complete, Defendant continued to market their coffee makers, and only recalled the product after the CPSC became involved.

25. Defendant also marketed the subject coffee makers in a defective manner in that Defendant failed to effectively warn or inform consumers of the unreasonably dangerous properties of the subject coffee maker and methods by which consumers, such as the Plaintiff, could guard against and/or mitigate such dangers.

26. Upon information and belief, but without the benefit of fact discovery and

pleading in the alternative as specifically allowed by Fed R. Civ. P. 8(d), the design and warning defects alleged above were the proximate cause of Plaintiff's injuries and damages, but those injuries and damages were or may have also been the result of manufacturing defects in the subject coffee maker which rendered the coffee maker unreasonably dangerous and not reasonably safe for its intended use, in that as fabricated and manufactured by Defendant, the lid or top of the coffee maker and its adjacent or related components were made of materials, or in such dimensions, that they lost the integrity of their connection and seal so as to allow the coffee maker's scalding hot contents to be forcibly ejected during normal, foreseeable use.

27. Defendant Keurig is strictly liable for all injuries and damages to Plaintiff related to this incident, in an amount well in excess of the jurisdictional minimum necessary to confer jurisdiction in this Court.

28. Defendant Peachtree Hotel Management, LLC., purchased the Keurig single-serve coffee makers and placed them in the hotel guest rooms. On July 21, 2021, Plaintiff began using the coffee maker. While waiting for her cup of coffee to finish brewing, the Keurig coffee maker exploded and sprayed hot water in Plaintiff's face leaving serious and painful burns. Defendant Peachtree knew or should have known of these defects, but disregarded safety by continuing to provide its coffee makers to hotel guests.

29. As a direct and proximate result of Defendant Peachtree's conduct, Plaintiff in this case incurred painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life. The subject incident giving rise to this lawsuit occurred at the Hilton Garden Inn, in the State of Wyoming, and this case is brought under the substantive product liability and negligence laws of the State of Wyoming.

## Count 2:
## Negligence: All Defendants

30. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

31. 45. Defendant Keurig had a duty of reasonable care to design, manufacture, market, and sell non-defective coffee makers that are reasonably safe for their intended uses by consumers, such as Plaintiff. Defendant Keurig also had a duty to adequately warn of dangers posed by a product's design. These duties apply to the subject coffee maker at issue in this case.

32. Defendant failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its coffee makers in that Defendant knew or should have known that said coffee makers created a high risk of unreasonable harm to the Plaintiff and consumers alike.

33. Specifically, Defendant was negligent in the design, manufacture, advertising, warning, marketing and sale of its coffee makers in that, among other things, they:

   a. Failed to use due care in designing and manufacturing the coffee makers to avoid the aforementioned risks to individuals;

   b. b. Placed an unsafe product into the stream of commerce;

   c. c. Aggressively over-promoted and marketed its coffee makers through television, social media, and other advertising outlets; and/or

   d. Were otherwise careless or negligent.

34. Despite the fact that Defendant Keurig knew or should have known that

9

superheated water can be forcibly ejected after the brew process is complete, Defendant Keurig continued to market their coffee makers to the general public; and only recalled the product after the CPSC became involved.

35. Defendant Keurig knew, or in the exercise of ordinary care should have known, of the means of designing, manufacturing and marketing the subject coffee maker such that the type of incident and resulting injuries and damages as described herein would be prevented. Defendant had actual knowledge of the means of designing a coffee maker that would not be inadequate and dangerous. Notwithstanding this knowledge, Defendant failed to adequately design, equip and/or manufacture the subject coffee maker.

36. Defendant Keurig was additionally negligent in that it failed to give adequate or proper warnings or instructions, and failed to make appropriate post-sale marketing efforts to prevent known incidents, such as the one detailed herein.

37. Defendant Keurig owed Plaintiff, as well as the public at large, the duty of reasonable care in designing, manufacturing and marketing the subject coffee maker. Defendant failed to act as an ordinary prudent manufacturer in manufacturing the subject coffee maker and violated their duties and were negligent and this negligence includes those acts and/or omissions previously described herein.

38. Defendant is, therefore, liable for their negligence for the injuries and damages to Plaintiff related to this incident, in an amount well in excess of the jurisdictional minimum necessary to confer jurisdiction in this Court.

39. Defendant Peachtree Hotel Management, LLC., purchased the Keurig single-serve coffee makers and placed them in the hotel guest rooms. On July 21, 2021, Plaintiff began using the coffee maker. While waiting for her cup of coffee to finish brewing, the Keurig coffee maker exploded and sprayed hot water in Plaintiff's face leaving serious and painful burns. Defendant Peachtree knew or should have known of these defects, but disregarded safety by continuing to provide its coffee makers to hotel guests.

40. Despite the fact that Defendant Peachtree knew or should have known that superheated water can be forcibly ejected after the Keurig brew process is complete, Defendant Peachtree continued place the Keurig coffee making into the rooms of their hotel guests.

41. Defendant Peachtree is, therefore, liable for their negligence for the injuries and damages to Plaintiff related to this incident, in an amount well in excess of the jurisdictional minimum necessary to confer jurisdiction in this Court.

42. As a result of all Defendants conduct, Plaintiff in this case incurred painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## Count 3:
**Breach of Express Warranty: Keurig**

43. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

44. Defendant expressly warranted that their coffee makers were safe and effective to members of the consuming public, including Plaintiff.

45. Members of the consuming public, including consumers such as the Plaintiff,

were the intended third-party beneficiaries of the warranty.

46. Defendant marketed, promoted and sold their coffee makers as a safe and convenient means of making coffee.

47. Defendant breached its express warranties in one or more of the following ways:

> a. The coffee makers as designed, manufactured, sold and/or supplied by the Defendantt was defectively designed and placed into the stream of commerce by Defendant in a defective and unreasonably dangerous condition;
>
> b. Defendant failed to warn and/or place adequate warnings and instructions on their coffee makers;
>
> c. Defendant failed to adequately test their coffee makers; and/or
>
> d. Defendant failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from their coffee makers.

48. The Plaintiff used the coffee maker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of brewing coffee.

49. Plaintiff's injuries and recoverable damages were the direct and proximate result of Defendant's breach of their express warranties.

## Count 4:
### Punitive Damages: Keurig

50. Plaintiff incorporate by reference each of the allegations set forth in this Complaint as though fully set forth herein.

51. The acts, conduct, and omissions of Defendant, as alleged throughout this

Complaint, were willful and malicious. It is unconscionable and outrageous that Defendant would risk the health, safety, and well-being of consumers, including the Plaintiff in this case. Despite their knowledge that super-heated water could be forcibly ejected after the brew process was complete, Defendant made conscious decisions not to redesign, despite the existence of an economically feasible, safer alternative design, and not to adequately label, warn or inform the unsuspecting consuming public about the dangers associated with the use of their coffee makers. Defendant's outrageous conduct rises to the level that Plaintiff should be awarded punitive damages to deter Defendant from this type of outrageous conduct in the future, as well as to discourage other Defendant from placing profits above the safety of consumers in the United States of America.

52. Prior to and during the manufacturing, sale, and distribution of their coffee makers, Defendant knew that the coffee makers were in a defective condition as previously described herein and knew that those who purchased and used their coffee makers, including Plaintiff, could experience severe physical, mental, and emotional injuries.

53. Further, Defendant knew that its coffee makers presented a substantial and unreasonable risk of harm to the public, including Plaintiff.  Defendant unreasonably subjected consumers of said coffee makers to risk of serious and permanent injury from their use.

54. Despite their knowledge, Defendant, for the purpose of enhancing their profits, knowingly and deliberately failed to remedy the known defects in their coffee makers,

and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in them. Defendant intentionally proceeded with the manufacturing, sale, distribution and marketing of their coffee makers knowing these actions would expose consumers, such as the Plaintiff, to serious danger in order to advance their pecuniary interest and monetary profits; and only recalled the product after the CPSC became involved.

55. Defendant's knowing failure to act to protect the safety of the public and its consumers, and their placement of focus on ongoing profit ahead of safety, despite actual knowledge of the dangers and failure to warn or attempt to inform or educate the public of said dangers, is clear and convincing evidence demonstrating willful misconduct, malice, fraud, wantonness, oppression and/or that entire want of care, which would raise the presumption of a conscious indifference to consequences, such that punitive (exemplary) damages are necessary to deter Defendant from repeating or continuing such unlawful and dangerous conduct in the future.

56. Defendant is liable to Plaintiff for punitive (exemplary) damages in an amount to be determined by the enlightened conscience of the jury, based on the clear and convincing evidence to be presented at trial, in an amount sufficient to deter Defendant and others from future similar conduct.

## VI. REQUESTED RELIEF

Plaintiff requests the following relief:

1. Enter judgment in Plaintiff's favor.

2. Award Plaintiff compensatory damages, plus pre-judgment interest thereon.

3. Award attorneys' fees and other costs as allowed by law.

4. Award punitive damages as allowed by law.

5. Grant such other further relief as the Court deems appropriate.

<u>Demand for Jury Trial</u>

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated: June 21, 2025.

        MGL LAW, LLC,

        /s/ Mark G. Lukehart
        Mark G. Lukehart, CO#27387
        600 17th Street, Suite 2800 North
        Denver, CO 80202
        303.268.7913
        mlukehart@mgltrial.com
        *Attorneys for Plaintiff*